UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEROME CAMPBELL, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>IROBOT CORPORATION, COLIN M. ANGLE, and ALISON DEAN,<br><br>Defendants. | No.<br><br><u>CLASS ACTION</u><br><br>JURY TRIAL DEMANDED |

Plaintiff Jerome Campbell ("Plaintiff"), by and through his counsel, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, *inter alia*, counsel's investigation, which includes review and analysis of: (a) iRobot Corporation's ("iRobot" or the "Company") regulatory filings with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) press releases and media reports issued and disseminated by the Company; (c) analyst and media reports concerning iRobot; and (d) other public information regarding the Company.

## **INTRODUCTION**

1. This securities class action is brought on behalf of purchasers of iRobot securities between November 21, 2016 and October 22, 2019, inclusive (the "Class Period"). The claims asserted herein are alleged against iRobot and certain of the Company's current executives (collectively, "Defendants"), and arise under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

2. This matter arises from Defendants' misrepresentations and material omissions concerning their reasons for acquiring iRobot's two major distributors and the demand for the

Company's products. iRobot's most popular product line is the Roomba series of vacuums, which is comprised of autonomous robotic vacuum cleaners.

3. Throughout the Class Period, iRobot reported explosive, double-digit revenue growth, which it attributed to increasing demand for its Roomba products, expanded gross margin because of distributor acquisitions, greater brand awareness, and technological innovation. However, in reality, iRobot was engaging in channel-stuffing in order to inflate its sales and revenues figures, and had acquired two of its largest distributors to facilitate and conceal this deceptive practice.

4. On April 23, 2019, after the close of trading, iRobot surprised the market by announcing quarterly revenues that were below analyst expectations and also revealed surging inventory levels. In response to this news, iRobot's stock price fell from $130.57 per share on April 23, 2019, to $100.42 per share on April 24, 2019 on unusually high trading volume—a decline of over 23% in one trading day.

5. Then, on July 23, 2019, after the close of trading, iRobot cut its full-year earnings forecast. In response to this news, iRobot's stock price fell from $89.63 per share on July 23, 2019, to $74.51 per share on July 24, 2019 on unusually high trading volume—a decline of nearly 17% in one trading day.

6. Finally, on October 22, 2019, after the close of trading, iRobot cut the high end of its revenue expectations for the year, from $1.25 billion to $1.21 billion, and said it rolled back price increases after a "suboptimal" customer response. The Company reported increased inventory levels once again, with third quarter 2019 ending inventory of $248 million or 149 days in inventory ("DII") compared to the $161 million or 113 DII a year prior. In response to this news, iRobot's stock price fell from $54.03 per share on October 22, 2019, to $49.06 per

share on October 23, 2019 on unusually high trading volume—a decline of over 9% in one trading day.

7. As a result of Defendants' wrongful acts and omissions, and the resulting decline in the market value of iRobot's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

9. Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b).  iRobot conducts substantial business in this District, and many of the acts and conduct that constitute the violations of law complained of herein, including the preparation and dissemination to the public of materially false and misleading information, occurred in this District.  In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

10. Plaintiff, as indicated on the Certification submitted herewith, purchased shares of iRobot securities during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

11. Defendant iRobot, a Delaware corporation headquartered at 8 Crosby Drive, Bedford, Massachusetts 01730, is a global consumer robot company with a portfolio of products focused on indoor and outdoor cleaning applications.  The Company's common stock trades in

an efficient market on the NASDAQ under ticker symbol "IRBT." iRobot currently has over 28 million shares of common stock outstanding, owned by at least hundreds or thousands of investors.

12.     Defendant Colin M. Angle ("Angle") is a co-founder of iRobot and has served as Chief Executive Officer of the Company since June 1997 and Chairman of the Board of Directors since October 2008.

13.     Defendant Alison Dean ("Dean") has served as Executive Vice President, Chief Financial Officer, Treasurer, and Principal Accounting Officer of iRobot since April 2013.

14.     Defendants Angle and Dean are collectively referred to hereinafter as the "Individual Defendants." The Individual Defendants, because of their positions with iRobot, possessed the power and authority to control the contents of iRobot's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors. Each of the Individual Defendants was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.

## BACKGROUND

15.     iRobot is a global consumer robot company based in Bedford, Massachusetts. Founded in 1990, iRobot designs and builds robots to assist with household tasks and has sold more than 25 million robots worldwide. iRobot's most popular product line is its autonomous robotic vacuum cleaners, which the Company first introduced with the Roomba Vacuuming

Robot in 2002. iRobot's products, including the Roomba line, purport to feature proprietary technologies and advanced concepts in cleaning, mapping, and navigation.

16. In November 2016, iRobot announced the first of two upcoming acquisitions—the acquisition of the iRobot-related distribution business of Tokyo-based Sales on Demand Corporation ("SODC"). The Company said the acquisition would "better enable iRobot to maintain its leadership position and accelerate the growth of its business in Japan through direct control of pre- and post-sales market activities including sales, marketing, branding, channel relationships and customer service."

17. Following this announcement and throughout the Class Period, iRobot reported explosive, double-digit revenue growth and reaffirmed its positive outlook, attributing its strong performance to growing demand for the Roomba line of products, expanded gross margin because of distributor acquisitions, greater brand awareness, and technological innovation. The truth behind the Company's revenue numbers was that it was engaging in channel-stuffing—the deceptive practice of sending retailers and distributors in a company's distribution channel more products than those retailers would ordinarily purchase from the company or be able to sell to the public during a given period, enabling the company to book those as sales in the current quarter or year. Here, iRobot was stuffing the channel through its control of the two distributors it had acquired to continue its deceptive scheme.

## DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS CAUSE SUBSTANTIAL LOSSES TO INVESTORS

18. The Class Period begins on November 21, 2016, when iRobot announced it would be acquiring the iRobot-related distribution business of privately-held SODC. In a press release that day, the Company said the acquisition would "better enable iRobot to maintain its leadership position and accelerate the growth of its business in Japan through direct control of pre- and

5

post-sales market activities including sales, marketing, branding, channel relationships and customer service."

19.  iRobot completed the purchase of SODC on April 11, 2017 for $18 million—equal to the book value of the acquired assets.  In a press release issued the day of the acquisition's completion, the Company reiterated the purported rationale for the acquisition: to "better enable iRobot to maintain its leadership position and accelerate the growth of its business in Japan through direct control of pre- and post-sales market activities[.]"

20.  Then, on July 25, 2017, iRobot announced that it would be acquiring privately-held Robopolis SAS ("Robopolis"), based in Lyon, France, for $141 million.  Robopolis had been an exclusive distributor of iRobot products since 2006 and the Company's largest distributor in Europe, the Middle East, and Africa (the "EMEA" region).  In the press release announcing the acquisition, Defendant Angle stated: "At this stage in the Western European market evolution, and the growth opportunity it presents, we feel a more direct go-to-market strategy is necessary to continue driving adoption of robots for the home."  The press release also said the Ropobolis acquisition would "further enhance the company's distribution network, ensure global brand consistency and better serve the needs of European consumers while driving continued growth in Western Europe through a consistent approach to all market activities including sales, marketing, branding, channel relationships and customer service."

21.  On October 2, 2017, iRobot completed the acquisition of Robopolis.  In a press release issued that day, the Company reaffirmed its purported rationale for the purchase of its largest European distributor, stating: "With the acquisition, iRobot will further extend its overseas control of market activities, including consistent global messaging, that will help drive greater adoption of robotic vacuum cleaners and affirm iRobot's segment leadership."

22. Following the acquisitions, in a February 7, 2018 press release, iRobot reported "record" revenue fourth quarter and full-year revenue: "[W]e delivered fantastic quarterly and full-year revenue growth of 54% and 34% respectively, over Q4 and full-year 2016. Record Q4 revenue was driven by very strong sales in the United States, and in EMEA, as the overall category continued to grow at an accelerating rate." The Company also stated that, in 2018, it expected to "cross the billion-dollar revenue threshold and deliver $1.05 to $1.08 billion in revenue, which is year-over-year growth of 19% to 22%, operating income of $86 to $96 million and EPS of $2.10 to $2.35."

23. On June 12, 2018, Defendant Dean spoke at the Nasdaq Investor Conference. Dean discussed the Company's recent acquisitions of SODC and Robopolis, saying:

> [T]here were two situations where we felt by going direct to market, we would be better off and that resulted in the two acquisitions we made last year . . . . And the rationale there was that these distributors have done a great job, getting us established and creating that initial market awareness . . . . [T]he real benefits we think we will get from that, ***there's certainly a pickup in revenue and margin by taking out the middleman, but it's really this direct control of go-to-market activities that we think will further help us penetrate the market there and drive further adoption of the products in the categories.***

24. That day, an investment analyst upgraded its rating of iRobot stock to "Good" from "Above Average," citing a rise in the Company's business market sentiment and the likelihood that the Company would deliver long-term returns.

25. On July 25, 2018, iRobot held its second quarter 2018 earnings call. On that call, Defendant Angle reported 15% year-over-year revenue growth in the U.S. and 34% international revenue growth. Defendant Angle noted: "In the U.S., sales were robust . . . as consumers continued to appreciate the value proposition of our products. In EMEA, revenue grew 51%, where we saw strong demand, also benefiting from the revenue uplift associated with sales in the EMEA countries, where we now sell direct."

26. On that call, Defendant Angle also discussed iRobot's inventory levels, telling investors that the Company expected DII—an efficiency ratio that measures the average number of days a company holds its inventory before selling it—to increase temporarily because of structural changes in the Company's business and "typical quarterly fluctuations" before declining at year-end. He stated: "We continue working to identify operating efficiencies to improve working capital and reduce DII over time." Later on the call, an investment analyst from Piper Jaffray Companies asked Defendant Dean to confirm a comment she had made that implied there had been no change in channel inventory, to which Dean replied: "Yeah, I'd say the channel inventory levels are where they normally are. I don't think they've changed dramatically from where they were at the end of Q1 or last year."

27. Defendant Angle again spoke about the SODC and Robopolis acquisitions at the Citi Global Technology Conference on September 5, 2018. A research analyst for Citigroup asked about the strategic importance for iRobot of acquiring the two distributors. Angle replied:

> [W]e saw that there are opportunities to improve the performance of these distributors by focusing on how they were going to market, in particular how they were approaching online sales, because these, the two distributors we bought, were very much—had DNA in the brick-and-mortar domain and we felt missing opportunities online. And so that we made these two acquisitions [last year] and have been able to really successfully move them into a more mixed focus between brick and mortar and online, start deploying the marketing programs that have been proven out in North America, and are very excited about those acquisitions driving the growth that we're predicting, continuing well into the future.

28. Then, on October 24, 2018, iRobot held its third quarter 2018 earnings call. When asked for a comment about overall growth rates for the Company given the one-year anniversary of the SODC and Robopolis acquisitions, Defendant Dean responded: "We're continuing to see good momentum in all the markets regionally, U.S., EMEA, and Japan, and I think that will all be growth contributors as we look forward."

8

29.     Similarly, on a February 7, 2019, fourth quarter and year-end 2018 earnings call, Defendant Angle reported: "Revenue grew 24%, crossing the $1 billion revenue threshold in an increasingly competitive market and we delivered an operating margin of nearly 10% after absorbing the impact of tariffs in Q4." Angle also attributed strong holiday performance to "[s]ubstantial demand for our game-changing Roomba i7 and i7+," and said that "over-performance in Japan was driven by robust Q4 demand supported by our sales and marketing programs in that region."

30.     The statements identified in ¶¶ 18-29 were materially false and misleading, or omitted material information known to Defendants necessary to make the statements not false and misleading, when made. Specifically, Defendants misled investors by repeatedly telling them throughout the Class Period that the Company was seeing continued double-digit revenue growth, and by attributing the growth to increased demand for the Roomba when, in reality, Defendants were engaging in channel-stuffing to artificially boost sales. Defendants also misstated that the Company's channel inventory levels had not changed and would not change dramatically from quarter to quarter or year over year, when in fact iRobot was deliberately stuffing the channel to claim false revenue growth.

## THE TRUTH EMERGES

31.     On April 23, 2019, after the close of trading, iRobot surprised the market by announcing quarterly revenues that were below analyst expectations and also revealed surging inventory levels. Specifically, the Company reported DII of 140 for the three months ended March 30, 2019, compared to DII of 101 for the three months ended March 31, 2018. Inventory also rose to $181 million as of March 30, 2019, up from $112 million in April 2018.

9

32. In response to this news, iRobot's stock price fell from $130.57 per share on April 23, 2019, to $100.42 per share on April 24, 2019 on unusually high trading volume—a decline of over 23% in one trading day.

33. On July 23, 2019, after the close of trading, iRobot cut its full-year earnings forecast. Specifically, fiscal year 2019 revenue guidance was lowered from a range between $1.28 billion and $1.31 billion, to a range between $1.2 billion and $1.25 billion, and earnings per share guidance was lowered from a range between $3.15 and $3.40 to a range between $2.40 and $3.15. In response to this news, iRobot's stock price fell from $89.63 per share on July 23, 2019, to $74.51 per share on July 24, 2019 on unusually high trading volume—a decline of nearly 17% in one trading day.

34. Then, after the close of trading on October 22, 2019, iRobot issued a press release reporting third quarter 2019 financial results. The Company cut the high end of its revenue expectations for the year, from $1.25 billion to $1.21 billion, and said it rolled back price increases after a "suboptimal" customer response. Tellingly, the Company reported increased inventory levels once again, with third quarter 2019 ending inventory of $248 million or 149 DII compared to the $161 million or 113 DII a year prior. In response to this news, iRobot's stock price fell from $54.03 per share on October 22, 2019, to $49.06 per share on October 23, 2019 on unusually high trading volume—a decline of over 9% in one trading day.

## LOSS CAUSATION

35. During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market. These misleading statements and omissions artificially inflated the price of iRobot securities and operated as a fraud or deceit on the Class (as defined below). Later, when Defendants' prior misrepresentations and fraudulent conduct were disclosed to the market, iRobot's share price fell

significantly. As a result of their purchases of iRobot securities during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## CLASS ACTION ALLEGATIONS

36. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased iRobot securities during the Class Period (the "Class"). Excluded from the Class are Defendants and their families, directors, and officers of iRobot and their families and affiliates.

37. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. iRobot has over 28 million shares of stock outstanding, owned by at least hundreds or thousands of investors.

38. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class, which predominate over questions which may affect individual Class members, include:

    a)    Whether Defendants violated the Exchange Act;

    b)    Whether Defendants omitted and/or misrepresented material facts;

    c)    Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

    d)    Whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

    e)    Whether Defendants' misconduct impacted the price of iRobot securities;

   f)  Whether Defendants' conduct caused the members of the Class to sustain damages; and

   g)  The extent of damages sustained by Class members and the appropriate measure of damages.

  39. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

  40. Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

  41. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## **INAPPLICABILITY OF STATUTORY SAFE HARBOR**

  42. iRobot's "Safe Harbor" warnings accompanying its forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

  43. Defendants are also liable for any false or misleading forward-looking statements pleaded herein because, at the time each such statement was made, the speaker knew the statement was false or misleading and the statement was authorized and/or approved by an executive officer of iRobot who knew that the statement was false. None of the historic or present-tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to, or stated to be dependent on, those historic or present-tense statements when made.

**PRESUMPTION OF RELIANCE**

44. At all relevant times, the market for iRobot securities was an efficient market for, among others, the following reasons:

a) iRobot securities met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

b) As a regulated issuer, iRobot filed periodic public reports with the SEC and the NASDAQ;

c) iRobot regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

d) iRobot was followed by several securities analysts employed by major brokerage firm(s) who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firm(s). Each of these reports was publicly available and entered the public marketplace.

45. As a result of the foregoing, the market for iRobot securities promptly digested current information regarding iRobot from all publicly available sources and reflected such information in the price of iRobot securities. Under these circumstances, all purchasers of iRobot securities during the Class Period suffered similar injury through their purchase of iRobot securities at artificially inflated prices and the presumption of reliance applies.

46. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class' claims are grounded on Defendants' material misstatements. Because

this action involves Defendants' misrepresentation of material information regarding its revenue growth, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the misstatements be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Company's sales to investors, as set forth above, that requirement is satisfied here.

## COUNT I

**For Violations of Section 10(b) of the Exchange Act and Rule 10b-5 against Defendants**

47. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48. During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase iRobot securities at artificially inflated prices.

49. Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

50. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the U.S. mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's financial well-being, operations, and prospects.

51. During the Class Period, Defendants made the false statements specified above, which they knew or recklessly disregarded to be false or misleading in that they contained

misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

52.   Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or recklessly disregarded the true facts that were available to them. Defendants engaged in this misconduct to conceal iRobot's true condition from the investing public and to support the artificially inflated prices of the Company's securities.

53.   Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they purchased iRobot securities at artificially inflated prices and were harmed when the truth about iRobot negatively impacted the price of the Company's securities. Plaintiff and the Class would not have purchased iRobot securities at the prices they paid, or at all, had they been aware that the market prices for iRobot securities had been artificially inflated by Defendants' fraudulent course of conduct.

54.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases of the Company's securities during the Class Period.

55.   By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

## COUNT II

**For Violations of Section 20(a) of the Exchange Act against the Individual Defendants**

56.   Plaintiff repeats, incorporates, and realleges each and every allegation set forth above as if fully set forth herein.

57.   The Individual Defendants acted as controlling persons of iRobot within the meaning of Section 20(a) of the Exchange Act.  By virtue of their high-level positions, participation in and/or awareness of the Company's operations, direct involvement in the day-to-

day operations of the Company, and/or intimate knowledge of the Company's actual performance, and their power to control public statements about iRobot, the Individual Defendants had the power and ability to control the actions of iRobot and its employees. By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.    Awarding compensation to Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

D.    Awarding such equitable/injunctive or other further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: November 7, 2019

    Respectfully submitted,

    POMERANTZ LLP

    */s/ Jeremy A. Lieberman*
    Jeremy A. Lieberman
    J. Alexander Hood II
    600 Third Avenue, 20th Floor
    New York, New York 10016

Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
Email: peretz@bgandg.com

*Attorneys for Plaintiff*

**Submission Date**

2019-10-29 09:05:52

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.   I  make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.  I have reviewed a Complaint against iRobot Corporation ("iRobot" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.   I did not purchase or acquire iRobot securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.    I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired iRobot securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in iRobot securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.    I declare under penalty of perjury that the foregoing is true and correct.

# Name

**Print Name**

Jerome Campbell

**Signature**



**Full Name**

Jerome Campbell



# Acquisitions

**Configurable list (if none enter none)**

| Date Acquired | Number of Shares Acquired | Price per Share Acquired |
|---|---|---|
| 5/29/2019 | 50 | $88.45 |

# Sales

**Configurable list (if none enter none)**

| Date Sold | Number of Shares Sold | Price per Share Sold |
|---|---|---|
| None | None | None |

**iRobot Corporation (IRBT)**                                             **Campbell, Jerome**

### List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| 5/29/2019 | Purchase | 50 | $88.4500 |